**The DANFORTH FOUNDATION,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.
No. 17796.

United States Court of Appeals
Eighth Circuit.
June 30, 1965.

Albert E. Jenner, Jr., Chicago, Ill., H. S. Stolar and Fred L. Kuhlmann, St. Louis, Mo., William H. Charles and William D. Crampton, St. Louis, Mo., and Prentice H. Marshall and Kenneth S. Broun, Chicago, Ill., for appellant.

Jerome Fink, Attorney, Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., Lee A. Jackson, Morton K. Rothschild and Robert Bernstein, Attorneys, Dept. of Justice, Washington, D. C., and also Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., and John A. Newton, Asst. U. S. Atty., St Louis, Mo., on the brief, for appellee.

Before VAN OOSTERHOUT and MATTHES, Circuit Judges, and YOUNG, District Judge.

VAN OOSTERHOUT, Circuit Judge.

The issue presented by this appeal is whether the District Court rightly determined that the Commissioner properly denied taxpayer Danforth Foundation exemption from income tax for the years 1951 and 1952 upon the ground that taxpayer had unreasonably accumulated income in such years within the meaning of § 3814(1) of the Internal Revenue Code of 1939 as amended.

The factual background is fully and fairly set out in Judge Regan's well-considered memorandum opinion reported at 222 F.Supp. 761. We will not attempt to cover in detail the facts so well-stated and summarized in such opinion.

Taxpayer in the present action sought to recover income tax, interest and penalties assessed against it and paid by it, as follows:

| Year | Tax | Section 291(a) Penalty | Interest |
|------|-----|------------------------|----------|
| 1951 | $187,785.79 | $46,946.45 | $94,542.00 |
| 1952 | 134,952.31 | 33,738.08 | 59,844.88 |

The penalty issue has been compromised and settled and is not before us. Taxpayer has abandoned the issue raised in the trial court that the Commissioner failed to allow him certain deductible expenses.

Taxpayer has paid the additional income assessed for 1951 and 1952. It filed claim for refund which was denied. This action was timely commenced to recover the 1951 and 1952 taxes and interest. The trial court upheld the Commissioner's determination that the income tax exemption had been lost because of unreasonable accumulation of income. The court dismissed the taxpayer's suit. This timely appeal was taken; this court has jurisdiction. 28 U.S.C.A. § 1291.

Taxpayer is incorporated under the laws of Missouri as a perpetual charitable foundation. With respect to purposes, its Articles as amended provide:

"This Foundation is formed solely and only for purely charitable, educational and religious purposes and to promote the well-being of mankind throughout the United States."

The Commissioner by letter dated April 13, 1939, determined that taxpayer foundation was exempt from income tax under the provisions of § 101(6) I.R.C. 1939 for the year 1939 and "subsequent years so long as there is no change in your organization, your purposes or your method of operation."

On July 21, 1958, the Commissioner by letter advised taxpayer that he had after a careful review determined that the accumulation of income for the years 1951 and 1952 was unreasonable within the meaning of § 3814 and that his ruling reflected by his letter of April 13, 1939, is modified to the extent of disallowing exemption from income tax for the years 1951 and 1952. The letter notes that upon the basis of information furnished, the taxpayer is entitled to exemption from income taxation for 1953 and subsequent years and that contributions, bequests and gifts to the Foundation for all years remain deductible by the donors under §§ 170, 2055, 2106 and 2522, I.R.C. 1954 (and corresponding sections of I.R. C.1939).

Thus, it is entirely clear that the fundamental charitable, religious and educational objectives of the Foundation have not been challenged or questioned and that the revocation of the income tax exemption applicable only as to the years 1951 and 1952 was based entirely upon the unreasonable accumulation of income during such years.

Section 3814, the controlling statute on the issue before us, was enacted effective September 23, 1950, (§ 331 Rev. Act of 1950, 64 Stat. 957, 958) and was made applicable to taxable years commencing after December 31, 1950. § 333 Rev.Act of 1950. Taxpayer operated on a calendar year basis. Hence § 3814 applies to the taxpayer for 1951 and 1952 and subsequent years.

Section 3814 provides that the income tax exemption of otherwise exempt charitable organizations shall be denied for any taxable year—

"* * * if the amounts accumulated out of income during the taxable year or any prior taxable year and not actually paid out by the end of the taxable year—

(1) are unreasonable in amount or duration in order to carry out the charitable, educational, or other purpose or function constituting the basis for such organization's exemption under section 101 (6); * * *."

Section 3814 also denied tax exemption for other reasons not applicable here. No issue is here raised as to any misuse of the foundation except with respect to the income accumulation.

Prior to the 1950 enactment of § 3814, there was in existence no prohibition, statutory or otherwise, of income accumulation by a bona fide charitable foundation such as the taxpayer. We agree with the taxpayer's contention that the reasonableness of income accumulations prior to 1951 is not directly here involved. However, the amount of prior accumulations along with other accumulations, such as the totals of assets on hand, the program and needs of the foundation, is entitled to consideration in determining the reasonableness of the accumulations in 1951 and 1952. In reply to a similar contention made in Stevens Bros. Foundation, Inc. v. Commissioner of Internal Revenue, 8 Cir., 324 F.2d 633, 640, we said:

"Neither are we impressed with Foundation's argument that the Tax Court improperly considered accumulations prior to the enactment of the unreasonable accumulations statute in 1950. As demonstrated, this Act operated prospectively to deny tax exempt status. However, it is clear from the wording of the statute that accumulations of the taxable year and preceding years are to be *considered* in resolving the question whether the accumulations were unreasonable. See Erie Endowment v. United States, supra, 316 F.2d at 156, fn. 20."

Taxpayer relies upon the legislative history of § 3814 to support its position that substantial discretion was left with charitable organizations with respect to

the accumulation of income consistent with trust purposes. Attention is called to the fact that the bill as originally passed by the House required, subject to a few exceptions, the expenditure of all current income for trust purposes. The Senate rejected such provision as being too inflexible. The present statute arose out of the conference report. In considering the statute in the light of the legislative history, the Third Circuit in Erie Endowment v. United States, 3 Cir., 316 F.2d 151, 153, states:

"Here, an express if imprecise limitation against unreasonable accumulations has been written into the law. Senator George, Chairman of the Senate Finance Committee, presenting the Conference Report to the Senate, declared that the purpose of the provision was 'to force * * * charitable organizations to spend currently the money which they receive for the purposes upon which their favored tax status is based' * * * Absent a sufficient amount of charitable work commensurate with the total amount of Erie's available charitable funds, exempt status must cease or, in fact, never come into existence."

[2] It is clear from the language of the statute itself that Congress intended to tax accumulated income of charitable foundations which is unreasonable in amount or duration.

Treasury Regulations 111, § 29.3814–1 as amended provide inter alia:

"Amounts accumulated out of income become unreasonable when more income is accumulated than is needed, or when the duration of the accumulation is longer than is needed, in order to carry out the purpose constituting the basis for the organization's exemption.

* * * * * *

"Whether the conditions specified in paragraphs (1), (2) and (3) of section 3814 are present in any case must be determined from all the facts."

In Stevens Bros. Foundation, supra, in considering the standards to be applied in resolving the unreasonable accumulation issue, we quoted and applied the test stated in Samuel Friedland Foundation v. United States, D.N.J., 144 F.Supp. 74, 92, reading:

" 'What the true test appears to be is this,—Does the charitable organization have a concrete program for the accumulation of income which will be devoted to a charitable purpose and in the light of existing circumstances is the program a reasonable one?' " 324 F.2d 633, 639.

We likewise quoted with approval from Erie Endowment, supra, including the following excerpt:

" ' "Reasonableness," that hobgoblin of judicial minds, can only be divined on the basis of all relevant facts. The standard to be applied is whether the taxpayer can justify the total accumulation of income at the end of the taxable year, in terms of both time and amount, on the basis of a rational total program of charitable intent. The plan must be viewed in its entirety.' " 324 F.2d 633, 640.

In applying the law gathered from the quoted authorities to the facts of the case, we said:

"However, these loans and grants were not made as the result of any formulated or definite plan and such aid was not geared to the amount of Foundation's income. In the absence of a concrete program no reasonable justification appears for the large accumulations for the years in question." 324 F.2d 633, 640.

Stevens involved issues concerning abuses not present in the case before us. However, we were in Stevens confronted with the interpretation of the unreasonable accumulation provision of § 3814. We adhere to the interpretation of the statute there made.

There can be no question upon the record before us as to the utmost good faith and the humanitarian and charitable

purposes of William H. Danforth, creator of the trust, and William H. Danforth, his son Donald Danforth and his daughter, Dorothy Compton, who were serving as trustees of the Foundation during the period here in controversy. We fully agree with the trial court's finding, reading:

"There can be no doubt that the trustees' decisions to accumulate income were made in good faith and in anticipation of early formulation of expansive programs which they believed would more than use the accumulated funds. In the spring of 1951, Donald Danforth and Dorothy Compton were so convinced of the Foundation's future monetary needs to carry out its plans in the years to come that they requested their father to change his will to leave their shares of his estate, which would have totaled $7,249,440.00, to the Foundation. However, it is not the subjective beliefs and aspirations of the trustees which will define reasonableness under the statute." 222 F.Supp. 761, 767.

It is established that the trustees were willing and anxious at all times to have the trust funds applied for the fulfillment of the objectives of the trust. Under the trust agreement, principal as well as interest could be used for trust purposes. Donald Danforth testified that the trustees were willing to invade the corpus and that the trustees had no desire to restrict disbursements in order to perpetuate the trust. Dr. Brown testified that while he was serving as executive director no limitation with respect to cost of acceptable programs was placed upon him.

The Foundation received substantially all of its assets in the form of gifts from William H. Danforth and his wife. Mr. Danforth was the driving force and genius behind the creation and growth of Ralston Purina Co. The initial gift of assets valued at $101,030 was made in 1927. Additional gifts were made at frequent intervals thereafter. Most of the gifts were in the form of stock of Ralston Purina Co. The value of this stock has appreciated tremendously. At the close of the year 1950, a net market value of the Foundation's assets was $24,138,717 and its accumulated income, less capital gains, was $4,311,689. For the years 1951 and 1952, its gross income less capital gains amounted to $1,290,241 and $1,221,295 respectively. Its charitable expenditures for 1951 amounted to $128,-284 or about 10% of its income. For 1952, the charitable expenditures were $176,131 or less than 15% of income. During the two year period the accumulated income was increased by over $2,-000,000 to $6,934,739 at the end of 1952. A table summarizing pertinent financial information for the years 1944 through 1952 appears at p. 765 of 222 F.Supp. By 1960 the market value of trust assets had increased to $98,839,088. The income for that year was $2,787,817, while charitable expenditures amounted to $3,-105,006. The accumulated income at the end of 1960 was $4,727,264.

It is entirely clear that the Foundation had very substantial accumulations out of income during the years 1951 and 1952. Taxpayer does not question this. The attack is upon the court's finding that the accumulations for such years were not reasonable. Taxpayer in support of its contention that the 1951 and 1952 income accumulations were reasonable urges that the Foundation's primary purpose has always been to promote moral, spiritual and religious values in education through self-inspired and self-operated programs as distinguished from bare monetary grants to existing charitable or educational institutions. As demonstrated by the trial court in its opinion, some programs had been conceived and carried out. The total of all charitable contributions made by the Foundation including non-program grants from the inception of the trust in 1927 through 1952 amounted to approximately $1,400,000. By 1945, it became apparent to the trustees that considerably more money was available than needed for carrying out the existing self-operated programs. A diligent search

was instituted for a competent executive director who was in sympathy with the objectives of the Foundation. One of his principal duties would be to devise self-operated programs for carrying out the objectives of the trust. Such a man was found in Dr. Brown, then President of Denison University. After extensive negotiations, Dr. Brown accepted employment as executive director in October 1949 but due to prior commitments he was unable to enter upon active duty until January 1, 1951. Dr. Brown entered into the performance of his work with skill and diligence. He submitted a number of new programs for utilizing the trust funds which were adopted and placed in operation. With respect to the plans adopted in 1951 and 1952, the court found:

> "[T]he evidence presented fails to show that the programs adopted will, as budgeted, begin to use expected annual income, let alone that accumulated before the questioned period. Furthermore, the record is absent any showing of attempt to relate the programs to anticipated income. Expenditures for programs designed by the end of 1951 could not be expected to exceed $300,000.-00 in charitable grants, and under all programs designed by the end of 1952, expenditures could not be expected to exceed $500,000.00 in the immediate future. Further projection of probable charitable grants under programs of the Foundation would require speculation. Meanwhile, subsequent annual income could reasonably be anticipated to exceed $1,000,000.00. The conclusion that the unexpended income of $1,104,990.98 in 1951 and $978,059.-24 in 1952, making a total accumulation of $6,394,739.46 by the end of 1952, constitute unreasonable accumulations is inescapable." 222 F. Supp. 761, 768.

Additionally taxpayer asserts that a number of other programs were conceived by Dr. Brown which were summarized by him in a memorandum to the trustees dated October 15, 1952, under the title "Possible New Activities". With respect to such programs, the court properly found: "There is no evidence that these additional programs were more than mere ideas during the years 1951 and 1952." 222 F.Supp. 761, 767.

We fully agree that Dr. Brown's suggestions contained in his October 1952 memorandum had not reached the status of a concrete program. Moreover, the evidence indicates that during the ten years Dr. Brown served the program expenditures never came close to approaching annual gross income.

The trustees, after learning in 1953 that the income tax exemption was being questioned by reason of income accumulations, rapidly increased the Foundation's non-program grants to qualified beneficiaries and thus made sufficient use of its income to entitle it to tax exemption for 1953 and subsequent years. Thus, it is apparent that it is possible for a foundation to comply with the unreasonable income accumulation provision of § 3814 within a reasonably short time. Here it is obvious that it would have taken the Foundation many years to devise well-conceived, self-operated programs which would consume its substantial and growing annual income.

It would defeat the language and intent of § 3814, which was designed to force the use of foundation income for charitable purposes, to permit the delay in distribution of accumulating income which would result from withholding disbursement of such income until adequate self-operating programs were established which would consume the income as it accumulated. The trust by 1951 was a well-established trust. The problem of a large excess of income over charitable expenditures was not a new one. The burden imposed upon the taxpayer here by § 3814 was in essence the same as that imposed upon other foundations.

■ The trial court's opinion reflects that it gave full consideration to all sources of aid in the interpretation problem presented to it and that it reached an interpretation of the statute in ac-

cord with that reached by this court in Stevens. The findings of fact made by the trial court that the 1951 and 1952 accumulations of income by the trust are unreasonable is not induced by any erroneous view of the law and is adequately supported by substantial evidence.

The order dismissing the taxpayer's complaint is affirmed.