Ina Belle THOMPSON and B. D. White, Administrators of the Estate of I. W. Thompson, et al., Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 27994.

United States Court of Appeals, Fifth Circuit.

July 24, 1970.

Rehearing Denied Sept. 15, 1970.

Eldon B. Mahon, U. S. Atty., Fort Worth, Tex., R. Brooks Hardee, U. S. Atty., John Robert Adamson, Asst. U. S. Atty., of counsel, Tyler Tex., John O. Jones, Atty., Tax. Div. Dept. of Justice, Forth Worth, Tex., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Jonathan S. Cohen, David E. Carmack, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

Allen E. Pye, J. Robert Dobbs, Jr., Tyler, Tex., for plaintiffs-appellees.

Before RIVES, GEWIN and INGRAHAM, Circuit Judges.

## INGRAHAM, Circuit Judge.

In this income tax refund suit, the estates of I. W. Thompson and Charlie Thompson, his wife, sought refund of federal income taxes for the years 1957 and 1958 in the amount of $47,967. In defending, the United States asserted a counterclaim for federal income taxes for the same years in the amount of $43,544.62 against the "Select Minority Trust", established by and having as its sole trustee, I. W. Thompson.

The district court, sitting without a jury, entered judgment for the estates on the refund suit and in favor of the "Select Minority Trust" on the government's counterclaim. The United States appeals only that portion of the judgment entered in favor of the Trust.

In 1949, I. W. Thompson established a trust known as "Selected Minority Funds"[1] and appointed himself as sole trustee. The purpose of the trust fund was to provide aid to deserving college students who, in order to qualify as beneficiaries, must declare a belief in democratic socialism and agree to refrain from the use of intoxicating liquor and tobacco.

Under the terms of the trust instrument, Thompson retained broad powers with respect to its administration, including the power to select beneficiaries, to withhold payment of trust funds to beneficiaries, and to amend the trust, subject only to the limitation that it could not be changed to the extent that it ceased to be an "educational trust".

In 1951, the Thompsons executed a deed conveying to I. W. Thompson, Trustee, 9/10 of all oil, gas, and other minerals in and under approximately 86 acres of land in the productive Van field in Van Zandt County, Texas. The fair market value of this interest on the date of transfer was not less than $650,000. The oil and gas royalties attributable to the mineral interest so conveyed were thereafter paid to the trust.

In 1955, the trust purchased real estate in Van, Texas, upon which there were to be erected business and residential rentals units, but such plans never reached fruition.

---

1. The trust instrument was subsequently amended in 1959 and the name changed to "Select Minority Trust". The amend- ments as made did not change the nature or character of the trust and as such, do not concern us here.

The trust above described has never made any distribution of funds to any beneficiaries since its creation. All contacts with colleges or other institutions of higher learning, in an effort to distribute the funds of the trust, were confined to the period prior to 1956, and all such efforts met with failure.

I. W. Thompson and his wife, Charlie Thompson, duly filed joint income tax returns for each of the years in question but since they did not consider the income paid to the trust as income accruing to them personally, they did not include that income in their individual returns. Moreover, since they did not regard the trust as a taxable trust, they did not file an income tax return on behalf of the trust for any of the years involved.

The Internal Revenue Service rejected the position taken by the Thompsons and, after a complete investigation, made deficiency assessments against the Thompsons, individually, totaling $30,-588.55 for the year 1957 and $17,379.05 for the year 1958. Failing voluntary payment of the deficiencies assessed, collection was made by levy on the bank accounts of I. W. Thompson and Charlie Thompson, individually.[2]

The sole issue on appeal and that which forms the underlying predicate of the government's counterclaim in the court below is whether the trust in question unreasonably accumulated income during the years 1957 and 1958 so as to lose the status of exemption from taxation pursuant to Sec. 504(a) (1) of the I.R.C. Code of 1954 (26 U.S.C. sec. 504(a) (1)). We conclude that the district court's determination that the trust did not unreasonably accumulate income within the meaning of Sec. 504(a) (1) of the Code is clearly erroneous and that portion of the judgment must be reversed and the case remanded for entry of judgment for the United States on its counterclaim.

Title 26 U.S.C. Sec. 504(a) (1) provides in pertinent part as follows:

Sec. 504 Denial of Exemption

(a) General rule—* * *, [E]xemption under section 501 shall be denied for the taxable year if the amounts accumulated out of income during the taxable year or any prior taxable year and not actually paid out by the end of the taxable year—

(1) are unreasonable in amount or duration in order to carry out the charitable, educational, or other purpose or function constituting the basis for exemption under section 501(a). * * *

In the Thompsons' previous litigation of this trust for the taxable years 1952–1956, the district court held that the trust was exempted from taxation under Sec. 501 of the Code since it was established and created for educational purposes. The government did not appeal that portion of the district court's decision, nor does it appeal the district court's ruling here, that the trust income is not taxable to the Thompsons individually or to the estate. Instead, the government seeks to overturn the district court's determination that the trust did not unreasonably accumulate income within the meaning of Sec. 504(a) (1) of the Code. The issue of unreasonable accumulations of income was not involved in Thompson v. United States, *supra*, for that case concerned taxation of trust income to the donor/settlor under Secs. 674 and 676 of the Code. Because the instant appeal is founded upon a wholly separate section of the Code and for different taxable years, the doctrines of res judicata and collateral estoppel are not applicable. See Commissioner of

2. A similar investigation, deficiency assessment and levy occurred for the tax years 1952–1956 which was litigated and ultimately decided in the Thompsons' favor. 209 F.Supp. 530 (E.D.Tex.1962), rev'd on other grounds, 332 F.2d 657 (5th Cir.

1964). As is true in the instant case, the government did not appeal that portion of the judgment which found that the trust income was not taxable to I. W. Thompson or Charlie Thompson, individually.

Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

The basis of the finding by the district court that the accumulation was not unreasonable was that Thompson was "interrupted" in his efforts to distribute the funds due to the government's attack upon the validity of the trust for tax purposes. The district court further found that the Thompsons had a "plan" for the distribution, although it is admitted that the plan was never implemented in that no funds were ever in fact distributed.

■ The government contends that the district court's finding that the accumulations were not unreasonable is clearly erroneous because: (1) the trust never distributed any of the funds; (2) the trust, contrary to the district court's finding, had no "plan" under which income accumulations were required to meet the educational goals for which it received its tax exempt status; (3) the terms of the trust made it nearly impossible to execute. Because the government has injected the issue via counterclaim, it must bear the burden of proving unreasonableness. United States v. Molitor, 337 F.2d 917, 922 (9th Cir. 1964).

■ In determining the reasonableness of accumulations for Sec. 504 purposes, the court may properly look to see if the trust has a concrete program for accumulation of income and whether this program is reasonable from a practical standpoint. Both present and past operations of the trust are to be properly considered in judging the reasonableness of the accumulations. See Danforth Foundation v. United States, 347 F.2d 673, 676 (8th Cir. 1965), cert. denied, 382 U.S. 955, 86 S.Ct. 432, 15 L.Ed.2d 360 (1965); Stevens Brothers Foundation, Inc. v. C.I.R., 324 F.2d 633, 639 (8th Cir. 1963), cert. denied, 376 U.S. 969, 84 S.Ct. 1135, 12 L.Ed.2d 84 (1963). See also, Curt Teich Foundation v. C.I.R., 48 T.C. 963, 975 (1967), aff'd, 407 F.2d 815, 816 (7th Cir. 1969).

The trustee's claim that income was not distributed because of the government's pending actions is without merit. The government did not attack the trust's accumulation of income prior to 1957, yet since its establishment in 1949, no distribution of funds has occurred. Moreover, all attempts at finding beneficiaries appear to have ceased after 1955. The appellees' argument in this respect, as well as the district court's decision, runs counter to the purpose and intent of Sec. 504—to force distribution of accumulated income within a reasonable time.

■ Part of the purported "plan" of the trust was to accumulate enough income to interest colleges in the possibility of administering the grants. When weighed against the record of accumulations, this attempted justification rings hollow. It cannot be said that the trust was required to accumulate over $500,000 of income over and above the principal investment of $650,000 in order to interest colleges in administering grants of not more than a few thousand dollars. This is especially true in view of the fact that the trust had enough assets to purchase a sizeable tract of land in 1955 upon which it proposed to erect commercial buildings. In further attestation of the conclusion that such enormous accumulations over a nine year period were unreasonable is the fact that there is serious doubt that the trust was objectively capable of being fulfilled. This stems not only from the requirements imposed upon any potential beneficiary, but from the vast discretionary powers retained by the trustee. There is no better weather vane of future fulfillment or capability of fulfillment than the past record. The trustee admits that all colleges contacted have refused the grants. While this standing alone will not invalidate the trust, it will provide a basis for forcing the trust to disgorge some of its accumulated income. The accumulation of income as to both time and amount was not justified for it was not based upon a "rational total program of chari-

**392**

table intent". Erie Endowment v. United States, 316 F.2d 151, 155 (3rd Cir. 1963).

The district court's conclusion that the government's "attack" upon the status of the trust not only justified withholding income after 1956, but also justified the nondistribution of funds prior to that year is clearly erroneous and fails to recognize the manifest purpose for which Sec. 504(a) (1) of the Code was enacted.

Reversed and remanded with directions.